UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WESCO SALES CORPORATION, a California Limited Liability Company, Plaintiff, v. M/Y TAIL MAGNET, U.S.C.G. Official No. 904645, a 1986 Jersey Dawn Sportfisher Motor Yacht of Approximately 40-Feet in Length and 14.6-Feet in Beam, AND ALL OF HER ENGINES, TACKLE, ACCESSORIES, EQUIPMENT, FURNISHINGS, AND ALL OTHER APPURTENANCES, in rem, Defendant. | Case No.: 26-cv-1623-WQH-BJW **ORDER** |

HAYES, Judge:

The matter before the Court is the Motion for Interlocutory Vessel Sale and Authorization to Credit Bid filed by Plaintiff Wesco Sales Corporation, LLC ("Plaintiff"). (ECF No. 13.) No opposition has been filed.

## I. PROCEDURAL BACKGROUND

On March 14, 2026, Plaintiff initiated this action by filing a verified Complaint against the Defendant Vessel M/Y TAIL MAGNET, U.S.C.G. Official No. 904645, a 1986 Jersey Dawn Sportfisher Motor Yacht of Approximately 40-Feet in Length and 14.6-Feet in Beam ("Defendant Vessel"), and all of her engines, tackle, accessories, equipment, furnishings, dinghy, and all other appurtenances, *in rem* for vessel arrest, interlocutory sale, and money damages for breach of maritime contract for necessities, and quantum meruit. (ECF No. 1.)

On May 13, 2026, the Court issued an Order authorizing the arrest of the Defendant Vessel and appointing Plaintiff as substitute custodian. (ECF No. 4.)

On May 26, 2026, the U.S. Marshal arrested the Defendant Vessel and turned custody of her over to Plaintiff as substitute custodian. (ECF No. 7.)

On May 31, 2026, Plaintiff served the owners of the Defendant Vessel with the Notice of Vessel Arrest, Order Issuing Warrant and Appointing Substitute Custodian, Summons, Verified Complaint, and Warrant for Action In Rem. (ECF No. 8.)

As no Answer or responsive pleading was timely filed, Plaintiff requested a Default be entered against the Defendant Vessel on June 23, 2026. (ECF No. 10.) Default was entered on July 1, 2026. (ECF No. 11.)

Plaintiff filed the instant Motion for Interlocutory Vessel Sale and Authorization to Credit Bid on August 7, 2026. (ECF No. 13.)

## II. FACTUAL BACKGROUND

Plaintiff operates a marina located at 2630 Ingraham Street, San Diego, California. (ECF No. 1 at 2.) According to the U.S. Coast Guard records, Amanda Ragsdale and John Rost jointly own the Defendant Vessel. *Id*. at 2. On or about March 1, 2020, Ms. Ragsdale and Mr. Rost executed an Agreement of Private Wharfage (the "Wharfage Contract") with Plaintiff. *Id*.

Paragraph 10 of the Wharfage Contract provides that payments due thereunder are due and payable on the first day of each month. (ECF No. 1-2 at 6.) Due to failure to pay the sums required under the Wharfage Contract, Plaintiff's attorney sent Ms. Ragsdale a

letter on January 22, 2026, demanding payment of arrearages totaling $17,757.00 at the time. (ECF No. 1 at 2.) No one paid the arrearages demanded in Plaintiff's letter. *Id*.

Plaintiff seeks in rem relief against the Defendant Vessel for breach of maritime contract and quantum meruit. As of March 1, 2026, Plaintiff alleges damages of not less than $20,866.10 in accrued wharfage fees and other costs. *Id* at 3.

Plaintiff provides the declaration of Ray Jones ("Jones"), President of Long Beach Yacht Sales, Inc., and licensed yacht broker for 45 years at the time of this litigation, stating,

> [D]eterioration is significantly accelerated when a vessel remains under arrest and idle for several months, particularly in a saltwater environment. . . . [A]n arrested vessel typically, as here, receives only limited maintenance and is deprived of the regular operation necessary to keep its systems functioning properly. . . . It is my opinion that marine propulsion engines and auxiliary machinery are intended to be exercised periodically in accordance with the manufacturer's maintenance recommendations. . . . When an engine is not operated for prolonged periods, these protective processes do not occur. . . . While a vessel is idle while under arrest for several months mechanical and electrical systems, propulsion equipment, pumps, generators, electronics, plumbing, and other equipment deteriorate . . . . Especially in a saltwater environment, these conditions progressively worsen with the passage of time, resulting in a corresponding decline in both the vessel's physical condition and fair market value.

(Decl. of Ray Jones ¶ 4–5, ECF No. 13-2.) The declaration further states that the Defendant Vessel will continue to suffer increasing deterioration and depreciation for so long as she remains under arrest, and the Defendant Vessel should be sold at public auction because the time she remains idle further diminishes her condition and value. *Id*. at ¶ 5.

Jones estimates the fair market value of the Defendant Vessel to be approximately $39,000 if the 375 Caterpillar engines are operational and have less than running 2,000 hours and to be $19,000 if the engines are not operational or require substantial maintenance. *Id*. at ¶ 7. Jones based his estimates on a review of "several dozen detailed photographs" of the interior and exterior of the Defendant Vessel, two "comps" for the Defendant Vessel, the current market conditions, the fact that the Defendant Vessel will be

sold at a U.S. Marshal Auction (which buyers see as "distressed"), and the functioning of her engines. *Id*.

Plaintiff also submits the declaration of Ryan Clark ("Clark"), Director of Operations at the San Diego marina knowns as "Dana Landing" operated by Plaintiff, filed in support of Plaintiff's Ex Parte Application for Appointment of Substitute Custodian. (Decl. of Ryan Clark, ECF No. 3-1.) The declaration states that the substitute custodian will "provide ongoing wharfage services at the rate of $3.50 per foot of overall vessel length per day (*i.e.*, 40 ft. x. $3.50 = $140.00 per day)." *Id*. at ¶ 4. Additionally, the substitute custodian will "provide ongoing custodial services at the rate of $1.00 per foot of overall vessel length per day (*i.e.*, 40 ft. x. $1.00 = $40.00 per day)." *Id*. Finally, the substitute custodian will provide "interior vessel inspections twice monthly, at the rate of $50.00 per inspection," and will provide "additional services" at rates "not exceeding the usual and customary rates prevailing in the Port of San Diego." *Id*.

The pending Motion contains a certificate of service indicating that a copy of the Motion was served on Ms. Ragsdale and Mr. Rost, the registered owners of the Defendant Vessel. (ECF No. 13-4.) The docket reflects that no opposition to the pending Motion has been filed.

## III. DISCUSSION

### A. Maritime Lien

Plaintiff asserts that, under 46 U.S.C. § 31342(a), it has a statutorily conferred maritime lien on the Defendant Vessel because it provides "necessaries" to the Defendant Vessel. The statute provides that:

> [A] person providing necessaries to a vessel on the order of the owner or a person authorized by the owner –
>
> (1) has a maritime lien on the vessel;
>
> (2) may bring a civil action in rem to enforce the lien; and
>
> (3) is not required to allege or prove in the action that credit was given to the vessel.

46 U.S.C. § 31342(a). What constitutes "necessaries" within the meaning of the statute is defined broadly. *See Payne v. S.S. Tropic Breeze*, 423 F.2d 236, 241 (1st Cir. 1970) (explaining Congress' "intention that the statute be read expansively"). "Necessaries" generally means any item which is "reasonably needed for the venture in which the ship is engaged." *Foss Launch & Tug Co. v. Char Ching Shipping U.S.A., Ltd.*, 808 F.2d 697, 699 (9th Cir. 1987). "Wharfage services are 'necessaries' within the meaning of maritime law." *Cahuenga Associates II v. S/V MAKO*, 256 F. Supp. 3d 1092, 1094 (S.D. Cal. 2017) (collecting cases).

Here, Plaintiff has provided wharfage (storage) services to the Defendant Vessel pursuant to the Wharfage Contract. (ECF No. 1 at 2.) Wharfage is reasonably necessary for the operation and use of the Defendant Vessel. *Id*. Thus, Plaintiff has provided necessaries to the Defendant Vessel giving rise to a maritime lien against the Defendant Vessel under the statute. *See e.g.*, *Ex parte Easton*, 95 U.S. 68, 75–76 (1877) (noting "the contract for wharfage is a maritime contract, which . . . gives to the proprietor of the wharf a maritime lien on the ship or vessel"). A maritime lien encumbers the Defendant Vessel in favor of Plaintiff in an amount not less than $20,866.10, no part of which has been paid by the Defendant Vessel or her owners. (ECF No. 1 at 3.)

**B. Interlocutory Sale**

"The interlocutory sale of a vessel is not a deprivation of property but rather a necessary substitution of the proceeds of the sale, with all of the constitutional safeguards necessitated by the *in rem* process." *Ferrous Fin. Servs. Co. v. O/S Arctic Producer*, 567 F. Supp. 400, 401 (W.D. Wash. 1983). Rule E(9)(a) of the Federal Rules of Civil Procedure, Supplemental Rules for Admiralty and Maritime Claims governs interlocutory vessel sales and provides,

> (i) On application of a party, the marshal, or other person having custody of the property, the court may order all or part of the property sold . . . if:
>
> (A) the attached or arrested property is perishable, or liable to deterioration, decay, or injury by being detained in custody pending the action;

(B) the expense of keeping the property is excessive or disproportionate; or

(C) there is an unreasonable delay in securing release of the property.

Fed. R. Civ. P., Suppl. Adm. R. E(9)(a)(i). To justify an interlocutory sale, "Plaintiff need only establish the existence of one of the three provisions listed in Rule E(9)(a)(i)." *Bartell Hotels v. S/L Talus*, 445 F. Supp. 3d 983, 987 (S.D. Cal. 2020).

Here, Plaintiff moves for interlocutory sale on all three grounds. (ECF No. 13-1 at 15.)

1. Deterioration, Decay, or Injury.

Plaintiff argues that the Defendant Vessel suffers "unavoidable deterioration in condition and value" while in custody. (ECF No. 13-1 at 17.) Plaintiff presents the declaration of Jones in support of this contention. Jones stated that "deterioration is significantly accelerated when a vessel remains under arrest and idle for several months, particularly in a saltwater environment." (ECF No. 13-2 at ¶ 4.) As a result, the Defendant Vessel will "continue to suffer increasing deterioration and depreciation for so long as she remains under arrest," further diminishing her condition and value. (ECF No. 13-2 at ¶ 6.)

The Court finds the Defendant Vessel is liable to deterioration within the meaning of Supplemental Admiralty Rule E(9)(a)(i)(A). *See Tindini P/L v. Bruce*, No. 18-CV-04639-EDL, 2019 WL 1095824, at *2 (N.D. Cal. Jan. 15, 2019), *report and recommendation adopted*, No. 18-CV-04639-RS, 2019 WL 1095798 (N.D. Cal. Feb. 6, 2019) (accepting a similar declaration from Jones as evidence sufficient to establish deterioration criteria under Rule E(9)); *see also Pier 32 Marina Grp., LLC v. M/v Ocean Eyes*, No. 25-CV-2635-GPC-JLB, 2026 WL 1558326, at *3 (S.D. Cal. June 2, 2026) (finding that Plaintiffs demonstrated that the Vessel was deteriorating in condition and value as it sat idle based on a Jones declaration).

2. Excessive or Disproportionate Expense.

Maintenance expenses of several thousand dollars per month are excessive and disproportionate when a defendant has made no attempt to secure the vessel's release. *California Yacht Marina--Chula Vista, LLC v. S/V OPILY*, No. 14-CV-01215-BAS BGS,

2015 WL 1197540, at *4 (S.D. Cal. Mar. 16, 2015); *see also GB Cap. Holdings, LLC v. S/V Glori B*, No. 18CV312-WQH-AGS, 2019 WL 277387, at *4 (S.D. Cal. Jan. 22, 2019), *aff'd sub nom. GB Cap. Holdings, LLC v. Heston*, 802 F. App'x 304 (9th Cir. 2020).

Here, Plaintiff has presented evidence that substitute custodian expenses will have accrued in a sum of not less than $16,290.00 by the soonest possible date for vessel sale and will continue to accrue until the Defendant Vessel is sold. (ECF No. 13-1 at 22–23.) This calculation is based on Clark's declaration specifying that compensation for wharfage services is $140.00 per day plus $40.00 per day for general custodial services (totaling $180.00 per day), plus vessel interior inspections weekly at $50.00 per inspection. (ECF No. 3-1 at ¶ 4.) Jones estimates the fair market value of the Defendant Vessel to be approximately $39,000 if the engines are operational and to be $19,000 if the engines are not operational or require substantial maintenance. (ECF No. 13-2 at ¶ 7.) There are no facts in the record to the contrary. At the time of the Defendant Vessel sale, substitute custodian fees will account for 41.8% of a $39,000.00 value and 85.7% of a $19,000.00 value.

The Court finds the accrued costs as excessive and disproportionate to the estimated fair market value of the Defendant Vessel, given the defendants have made no effort to secure the Defendant Vessel's release, the Defendant Vessel is idle, and costs of custody are accruing. *See Shelter Cove Marina, Ltd. v. M/Y ISABELLA*, No. 317CV01578GPCBLM, 2017 WL 5906673, at *3 (S.D. Cal. Nov. 30, 2017 (finding that maintenance expenses amounting to 30% of the Defendant Vessel's total value are excessive and disproportionate); *see also Ferrous Fin. Servs. Co.,* 567 F.Supp. at 401 (W.D.Wash.1983) (finding expense excessive and delay unreasonable where cost of maintaining the vessel was $166,000 per year and defendant made no attempt to secure its release for four months).

3. <u>Unreasonable Delay in Securing Release.</u>

Because Plaintiff has demonstrated the Defendant Vessel is liable to deterioration, decay, or injury and that the expense of keeping the Defendant Vessel is excessive and

disproportionate, the Court declines to address unreasonable delay in this case. *See Bartell Hotels*, 445 F. Supp. 3d at 987 (noting a plaintiff need only establish the existence of one of the three provisions listed in Rule E(9)(a)(i) to establish a claim for interlocutory sale).

The Court finds interlocutory sale warranted under Supplemental Admiralty Rule E(9)(a)(i) and grants Plaintiff's motion for interlocutory sale of the Defendant Vessel.

**C. Credit Bid**

Under the Civil Local Rules,

> When the Court determines on the merits that a plaintiff or plaintiff in intervention has a valid claim senior in priority to all other parties, that plaintiff in intervention foreclosing a properly recorded and endorsed preferred mortgage on, or other valid security interest in the vessel may bid, without payment of cash, certified check or cashier's check, up to the total amount of the secured indebtedness as established by affidavit filed and served on all other parties no later than seven (7) days prior to the date of sale.

S.D. Cal. Civ. R. E.1(e)(2).

Plaintiff contends it is the only party who has asserted any maritime lien claim against the Defendant Vessel, and as such, it is by definition senior to all other claims in this action. (ECF No. 13-1 at 24.) Plaintiff asserts that the Court should authorize Plaintiff to credit bid at auction up to the lien amount in the verified Complaint ($20,866.10), plus the actual and demonstrable costs of suit, including U.S. Marshal, substitute custodian, and other *custodia legis* expenses, pursuant to the Local Admiralty rules. *Id*. at 24–25. Plaintiff asserts it will establish the lien amount by affidavit as required by Local Admiralty Rule E.1(e)(2). *Id*.

Provided Plaintiff complies with Local Rule E.1(e)(2) by establishing the total amount of the secured indebtedness by affidavit filed and served on all other parties no later than seven days prior to the date of the sale, the Court grants Plaintiff's request to authorize a credit bid up to the amount of secured indebtedness at the sale of the Defendant Vessel. *See Bank of Rio Vista v. VESSEL CAPTAIN PETE,*, No. C 04-2736CW, 2004 WL

2330704, at *3 (N.D. Cal. Oct. 14, 2004) (authorizing credit bid when defendants did not oppose the request).

## IV. CONCLUSION

IT IS HEREBY ORDERED that the Motion for Order of Sale filed by Plaintiff Wesco Sales Corporation (ECF No. 13) is granted.

IT IS FURTHER ORDERED that, consistent with Supplemental Admiralty Rule E(9)(B) and Civil Local Rule E.1(e)(2), the United States Marshal is directed and empowered to sell said the Defendant Vessel and her engines, tackle, accessories, equipment, furnishings and appurtenances, as is, where is, at public sale at the first available time and date, after having first caused notice of said sale to be published daily in a newspaper of general circulation within the City of San Diego, California, for at least seven days immediately before the date of sale; and

IT IS FURTHER ORDERED that such public notice specify the date, time, and location for the sale of the Defendant Vessel. Consistent with Civil Local Rule E.1(e)(2), such public notice shall also specify that the last and highest bidder at the sale will be required to deposit with the U.S. Marshal a certified check or a cashier's check in the amount of the full purchase price not to exceed $500, and otherwise $500 or ten percent (10%) of the bid, whichever is greater, and that the balance, if any, of the purchase price shall be paid by certified check or cashier's check before confirmation of the sale or within three days of dismissal of any opposition which may have been filed, exclusive of Saturdays, Sundays and legal holidays; and

IT IS FURTHER ORDERED that any proceeds of said sale shall be held by it or deposited by the United States Marshal in the Registry of this Court, pending further Order of this Court; and

IT IS FURTHER ORDERED that Plaintiff, having a secured maritime lien interest in the Defendant Vessel pursuant to the Commercial Instruments and Federal Maritime Lien Act (46 U.S.C. §§ 31301-31343) and being the only claimant in this action asserting a maritime claim against her, is authorized pursuant to Civil Local Rule E.1(e)(2) to credit

bid at the auction of the Defendant Vessel, without payment of cash, a sum equal to its secured interest in the Defendant Vessel as established by affidavit filed and served on all other parties no later than seven (7) days prior to sale pursuant to Civil Local Rule E.1(e)(2), consisting of the lien amounts specified in Plaintiff's Verified Complaint, totaling $20,866.10 (calculated through March 1, 2026), plus its actual costs of suit through the date of the sale, including U.S. Marshal and other *custodia legis* expenses, with such costs and expenses to be calculated at the rates specified and authorized in the Order appointing the Substitute Custodian. (ECF No. 4.) However, as Plaintiff's maritime necessaries lien interest in the Defendant Vessel does not, as a matter of law, include attorneys' fees, such fees are not to be included in any credit bid Plaintiff makes; and

IT IS FURTHER ORDERED, pursuant to Civil Local Rule E.1(e)(2), that if within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, no written objection is filed, the sale shall stand confirmed as of course, without the necessity of any affirmative action thereon by a judge, except that no sale shall stand confirmed until the buyer has complied fully with the terms of the purchase; and

IT IS FURTHER ORDERED that if no objection to the sale of the Defendant Vessel is filed within three days of the auction date, exclusive of Saturdays, Sundays, and legal holidays, the U.S. Marshal shall issue to the high and successful bidder a Bill of Sale for the Defendant Vessel.

Dated: 11/6/2026

William Q. Hayes

Hon. William Q. Hayes
United States District Court